## HANSON v. UNITED STATES.
### No. 3208.

Circuit Court of Appeals, Tenth Circuit.
Jan. 10, 1946.

Rehearing Denied Feb. 5, 1946.

Chas. M. Morris, of Salt Lake City, Utah (Knox Patterson, of Salt Lake City, Utah, on the brief), for appellant.

John S. Boyden, Asst. U. S. Atty., of Salt Lake City, Utah (Dan B. Shields, U. S. Atty., and Scott M. Matheson, Asst. U. S. Atty., both of Salt Lake City, Utah, on the brief), for appellee.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

The United States brought this action against Hanson to recover a penalty of $1,200 under 25 U.S.C.A. § 179. That Act provides that every person who drives or otherwise conveys any stock of horses, mules, or cattle, to range and feed on any land belonging to any Indian or Indian Tribe, without the consent of such Tribe, is liable to a penalty of $1 for each animal of such stock. The complaint alleged that on March 3, 1943, Hanson drove 1200 head of sheep to range and feed on lands belonging to the Uintah and White River Tribes of Ute Indians.

From a judgment in favor of the United States, Hanson has appealed.

At a pretrial conference, the trespass was admitted and it was agreed that the sole issue was whether or not the lands belonged to any Indian or Indian Tribe.

The lands in question were a part of an area in the Uintah Valley, in Utah, set apart by an order of President Lincoln in 1861, without treaty or agreement with any Indian Tribe, as a reservation for Indians who might subsequently occupy such area. By the Act of May 5, 1864,[1] the action of President Lincoln was confirmed by Congress. The confirmatory Act provides that the superintendent of Indian affairs for the territory of Utah is authorized and required to collect and settle as many Indians of said territory as may be found practicable in the Uintah Valley, "which is hereby set apart for the permanent settlement and exclusive occupation of such of the different tribes of Indians of said territory as may be induced to inhabit the same." The Act of May 27, 1902,[2] provided that the Secretary of the Interior, with the consent of the majority of the adult male Indians of the Uintah and White River tribes of Ute Indians, should cause to be allotted to each head of a family 80 acres, and to each other member 40 acres of irrigable, agricultural land; that such allotments should be made prior to October 1, 1903; that on the latter date, all unallotted lands "within said reservation" should be restored to the public domain; that persons entering under the homestead law any of such lands restored to the public domain should pay $1.25 per acre therefor; that the proceeds of the sale of the lands so restored to the public domain should first be applied to reimbursing the United States for moneys advanced to the Indians; and that the remainder should be used for the benefit of the Indians. The Act of March 3, 1903,[3] provided that the Secretary of the Interior should forthwith send an inspector

---

[1] 13 Stat. 63.
[2] 32 Stat. 245, 263, 264.

[3] 32 Stat. 982, 998.

to obtain the consent of the Uintah and White River Ute Indians to an allotment of their lands as directed by the Act of May 27, 1902, and that if their consent could not be obtained by June 1, 1903, the Secretary should proceed with such allotments as provided in such Act. The Act of April 21, 1904,[4] extended the time for opening the unallotted lands to the public domain to March 10, 1905. The Act of March 3, 1905,[5] extended such time to September 1, 1905. The latter Act also provided that proceeds from the sales of timber prior to June 30, 1920, from the Uintah Forest Reserve should be paid to the Indians in accordance with the provisions of the Act opening the reservation.

A part of the unallotted lands in such area restored to the public domain was withdrawn from entry and sale by an Executive Order dated July 14, 1905, and included within the Uintah National Forest. By the Act of February 13, 1931,[6] Congress appropriated $1,217,221.25 for payment, at the rate of $1.25 per acre, to the Uintah, White River, and Uncompahgre bands of Ute Indians in the State of Utah, for such lands so withdrawn. The Taylor Grazing Act of June 28, 1934,[7] provided that 50 per cent of all moneys received from each grazing district on Indian lands ceded to the United States for disposition under the public-land laws during any fiscal year should be deposited to the credit of the Indians pending final disposition under applicable laws, treaties, or agreements. Thus, Congress has recognized the beneficial title of such Indians to lands of such area restored to the public domain by the Act of May 27, 1902.

Approximately 220,000 acres of the lands restored to the public domain by the Act of May 27, 1902, remain undisposed of. Embraced therein are the lands upon which the trespass was committed. We think it clear that, while the legal title passed to the United States and the lands were subject to entry and sale, the beneficial title remained in the Indians and the United States held the lands as trustee for the Indians. We see no distinction between the instant case and Ash Sheep Company v. United States, 252 U.S. 159, 40 S.Ct. 241, 64 L.Ed. 507. The only difference is that in that case the trust relationship was created by an agreement amended and ratified by an Act of Congress. Here, it was created by Act of Congress.

We, therefore, conclude that the lands were Indian lands and that the judgment below should be affirmed.

---

[4] 33 Stat. 189, 207.
[5] 33 Stat. 1048, 1069.
[6] 46 Stat. 1092.

[7] 48 Stat. 1269, 1273, 43 U.S.C.A. § 315j.